1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-0805
        Facsimile: (213) 894-7819
        E-mail: Paul.Green@usdoj.gov

Attorneys for Real Party in Interest
DR. BENJAMIN CARSON, in his official capacity as
SECRETARY OF U.S. DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In re Estate of Mary Huff aka May F. Huff,<br><br>Decedent.<br><br>_____<br><br>JASON HUFF, in his official capacity as Administrator for Estate of Mary Huff,<br><br>Administrator,<br><br>v.<br><br>DR. BENJAMIN CARSON, in his official capacity as SECRETARY OF U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>Real Party in Interest. | Case No. 5:19-CV-1585-DSF (KKx)<br><br>**UNITED STATES DEPARTMENT OF URBAN AND HOUSING DEVELOPMENT'S OPPOSITION TO THE ADMINISTRATOR'S MOTION TO REMAND; DECLARATIONS OF MARK SELTZER AND PAUL B. GREEN**<br><br>Hearing Date: October 21, 2019<br>Hearing Time: 1:30 p.m.<br>Ctrm: 7D<br>Hon. Dale S. Fischer |

1

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                          PAGE

TABLE OF AUTHORITIES ................................................................................ii

HUD'S OPPOSITION TO THE MOTION TO REMAND ............................................. 1

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS ..................................................................... 2

        A.      HECM Program. ................................................................... 2

        B.      The Reverse Mortgage On The Property. ....................................... 4

        C.      The Reverse Mortgage Becomes Due and Payable. ................................. 4

        D.      The Two Petitions Subject To This Motion. ..................................... 6

        E.      Removal To Federal Court. .................................................... 7

III.    ARGUMENT ..................................................................................... 8

        A.      Removal Under 28 U.S.C. § 1442(a)(1) Was Proper .................................. 8

        B.      The Property And Supremacy Clauses Compel Removal. ......................... 10

        C.      The Probate Exception Does Not Bar The Court From Entering An
                Order To Declare HUD's Rights With Respect To Each Petition............... 14

IV.     CONCLUSION..................................................................................... 18

1

# TABLE OF AUTHORITIES

DESCRIPTION                                                                 PAGE

**Cases**

*Arizona v. Manypenny*,
   451 U.S. 232 (1981) ................................................................................ 8

*Ashwander v. Tenn. Valley Auth.*,
   297 U.S. 288 (1936) .............................................................................. 10

*Butler v. Kosin*,
   2009 WL 210721 (W.D. Va. Jan. 28, 2009) ....................................... 15

*Collegium Fund, LLC v. Wells Fargo Bank, N.A.*,
   2014 WL 4635607 (D. Nev. Sept. 15, 2014) ...................................... 10

*Cunningham v. World Sav. Bank, FSB*,
   2007 WL 4181838 (D. Ariz. Nov. 21, 2007) ...................................... 15

*Durham v. Lockheed Martin Corp.*,
   445 F.3d 1247 (9th Cir. 2006) ............................................................. 8

*Exch. Comm'n v. Braslau*,
   2016 WL 1735800 (C.D. Cal. May 2, 2016) ...................................... 14

*F.T.C. v. J.K. Publications, Inc.*,
   2009 WL 997421 (C.D. Cal. Apr. 13, 2009) ...................................... 14

*Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*,
   865 F.3d 1237 (9th Cir. 2017) .................................................. 8, 14, 15

*Hollander v. Irrevocable Trust*,
   2010 WL 2719850 (C.D. Cal. July 7, 2010) ...................................... 17

*In re Estate of de Lopez*,
   2011 WL 3652749 (Cal. Ct. App. Aug. 19, 2011) ............................... 2

*In re Guardianship of Neely*,
   2012 WL 830493 (N.D. Ind. Mar. 9, 2012) ....................................... 14

*In re Kendricks*,

    572 F. Supp. 2d 1194 (C.D. Cal. 2008) .......................................... 15, 16, 17

*La Russo v. St. George's Univ. Sch. of Med.*,

    747 F.3d 90 (2d Cir. 2014) .......................................................................... 8

*Marshall v. Marshall*,

    547 U.S. 293 (2006) ................................................................................... 14

*Rust v. Johnson*,

    597 F.2d 174 (9th Cir. 1979) .............................................................. 10, 11

*Sec'y of Hous. & Urban Dev. v. Sky Meadow Asso.*,

    117 F. Supp. 2d 970 (C.D. Cal. 2000) ................................................ 12, 13

*State of Alabama v. State of Texas*,

    347 U.S. 272 (1954) ................................................................................... 10

*United States v. Allegheny Cnty.*,

    322 U.S. 174 (1944) ................................................................................... 11

*United States v. Paulson*,

    2019 WL 1418058 (S.D. Cal. Mar 29, 2019) ........................................... 18

*Yunis v. United States*,

    118 F. Supp. 2d 1024 (C.D. Cal. 2000) ................................................... 12

**Statutes**

12 U.S.C. § 1715z-20 ........................................................................................ 2

12 U.S.C. § 1715z–20(a) ................................................................................... 3

12 U.S.C. § 1715z–20(b)(1) .............................................................................. 2

28 U.S.C. § 1442(a)(1) ................................................................................... 1, 8

28 U.S.C. § 1442(d)(1) ...................................................................................... 8

California Probate Code § 1220 ........................................................................ 7

California Probate Code § 10160 ...................................................................... 6

California Probate Code § 10160.5 .............................................................. 7, 16

**Rules**

Federal Rule of Civil Procedure 4(i).................................................................9

**Regulations**

24 C.F.R. § 206.125 ..............................................................5, 9, 10, 16

24 C.F.R. § 206.33 ........................................................................2

24 C.F.R. § 291.1(a)(2) ................................................................19

## HUD'S OPPOSITION TO THE MOTION TO REMAND

Real party in interest Dr. Benjamin Carson, in his official capacity as Secretary of the United States Department of Urban and Housing Development ("HUD"), hereby opposes the motion (the "Motion") (ECF No. 12) of Jason Huff, the administrator of the estate of Mary Huff (the "Administrator"), to remand the two petitions filed by the Administrator relating to the sale of real property located at 370 W. Easton St., Rialto, California 92378 (the "Property").

## I.  INTRODUCTION

The ultimate subject of the Motion is more than $400,000 in debt owed by Mary Huff (the "Decedent") to HUD. The debt is collateralized by the Property. If the Property is sold at the proposed price of $270,000, HUD will lose at least $134,000 on the sale. On top of that, the Administrator, his attorney, and his broker are seeking a large cut of the proceeds from the sale, amounting to $39,514 in fees. If these exorbitant fees are granted, HUD's losses—losses ultimately borne by American taxpayers—would climb to over $173,000.

HUD has removed, not the entire probate proceedings for Decedent's estate, but only the two petitions that affect HUD's interests, namely (1) the Report of Sale and Petition for Order Confirming Sale of Real Property ("Petition for Sale Order") (ECF. 1-1, Ex. 1; refiled and reformatted as ECF No. 14), which seeks court approval of an offer to purchase the Property and to pay $20,000 in broker commissions, and (2) the Petition for Sale Proceeds of Encumbered Property from Deed of Trust Held by Housing and Urban Development and to Determine the Amount Reasonably Related to Sale of Real Property ("Petition for Sale Proceeds") (ECF No. 1-2, Ex. 2), which seeks approval to apply $19,514 in sale proceeds to pay for fees and expenses sought by the Administrator and his counsel.

Removal to this Court was proper under 28 U.S.C. § 1442(a)(1) because the Petition for Sale Order and the Petition for Sale Proceeds seek judicial orders "directed to" HUD as the owner of a Deed of Trust on the Property. HUD's objections to the

petitions are grounded in federal law. Indeed, Congress has vested HUD with authority in the sale of real property secured by mortgage interests owned by HUD.

Rather than pursue a sale of the Property at a significant loss, the Administrator has other options. He can: (1) provide HUD with the deed in lieu of foreclosure, (2) have HUD foreclose on the Property, (3) continue to market the Property for a better offer for purchase, or (4) obtain financing to buy the Property himself. Instead of these options, the Administrator is attempting to sell the Property for his personal gain to the detriment of HUD, the American taxpayers, and future applicants of HUD-insured loans.

Accordingly, HUD respectfully requests that the Court deny the Motion to Remand and enter an order declaring and protecting HUD's rights on a sale of the Property to avoid significant losses of federal funds. Remanding the petitions without protecting HUD's interests would risk allowing the Administrator and his agents to improperly force fees out of an insolvent estate to the detriment of HUD and contrary to California law. *See In re Estate of de Lopez*, No. G044028, 2011 WL 3652749, at *9 (Cal. Ct. App. Aug. 19, 2011) ("no public policy is served by encouraging administrators and attorneys to embark on useless services when the estate is obviously insolvent and the services will not further benefit the estate"). Given the implications, the Court should deny the Motion to Remand.

## II.    STATEMENT OF FACTS

### A.    HECM Program.

HUD's interest in the Property stems from HUD's Home Equity Conversion Mortgages for Seniors ("HECM") program. The HECM program is a national loan insurance program under the National Housing Act, 12 U.S.C. § 1715z-20, that allows eligible senior homeowners to obtain mortgage loans based on the equity in their homes. The main objective of the HECM program is to allow senior homeowners to convert portions of their accumulated home equity into a liquid asset, in order to reduce the economic hardship of increased costs of health and housing on a reduced income. 12 U.S.C. § 1715z–20(b)(1); 24 C.F.R. § 206.33. This program is conducted nationwide and

insured more than 580,000 properties as of 2011. *See* Consumer Financial Protection Bureau's Report to Congress on Reverse Mortgages, June 2012, at 14.[1]

The HECM program makes lending to elderly homeowners attractive because HUD insulates the lenders from the risk. *See* 12 U.S.C. § 1715z–20(a). Because a HECM is a non-recourse loan, lenders can look to the value of the property for recovery of losses. HUD, *Annual Report Financial Status of the FHA Mutual Mortgage Insurance Fund* (Fiscal Year 2018), at 46.[2] "If the balance of the mortgage exceeds the appraised value of the property when the mortgage becomes due and payable and the property is sold via foreclosure or private sale, the lender is entitled to file a mortgage insurance claim with" Federal Housing Administration ("FHA"). *Id*. In addition, "lenders are also permitted to file mortgage insurance claims where the balance of the HECM reaches 98 percent" of the maximum claim amount by the lender on the HECM reverse mortgage loan. *Id*. "The lender will assign the HECM to the Secretary of HUD in exchange for claim payment. The Secretary will then hold and service the HECM until the HECM becomes due and payable." *Id*.

The overall amount paid on HECM claims by HUD increased to $5.69 billion in fiscal year 2018, up from $5.03 billion in fiscal year 2017. *Id*. at 15. The largest state for HECM endorsements by maximum claim amount is by far California at 33.17 percent, followed by Florida at 6.79 percent. *Id*. Reverse mortgage foreclosure rates are comparatively high in the Inland Empire, with San Bernardino experiencing a rate of 11.85, and Rialto a rate of 4.96, reverse mortgage foreclosures per 1,000 people 62-and-older between 2013 and 2017. "California seniors turned to reverse mortgages to stay in their homes. More than 9,000 loans failed," *Palm Springs Desert Sun* (June 12, 2019).[3]

---

[1] Available at: https://www.consumerfinance.gov/data-research/research-reports/reverse-mortgages-report/

[2] Available at: https://www.hud.gov/fhammifrpt

[3] Available at: https://www.desertsun.com/story/money/real-estate/2019/06/12/reverse-mortgage-foreclosure-seniors-california-inland-empire-riverside-san-bernardino-retirement/3666572002/

**B.    The Reverse Mortgage On The Property.**

On or around January 9, 2006, Decedent executed a first and second deed of trust on the Property for a reverse mortgage loan for a maximum principal amount of $544,185. (Declaration of Mark Seltzer ("Seltzer Decl."), ¶¶ 5, 7; Exs. A, C.)[4] In conjunction with the deeds of trust, the decedent executed a note that was insured under HUD's HECM program. (Seltzer Decl. ¶ 6; Ex. B.)

The deeds of trust state that whenever the loan becomes due and payable, the lender must not commence foreclosure until the borrower has had the chance to: "(i) Correct the matter which resulted in the Security Instrument coming due and payable; or (ii) Pay the balance in full; or (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or (iv) Provide the Lender with a deed in lieu of foreclosure." (Ex. A, § 9(d), Ex. C, § 9(c).)

On or around June 1, 2014, HUD was notified that the balance on the reverse mortgage loan had reached an amount that was more than 95% of the maximum claim amount, i.e. the maximum amount that a lender could claim from HUD, as insurer, against losses on the reverse mortgage loan. (Seltzer Decl. ¶ 9.) On January 8, 2016, the Deed of Trust was assigned to the Secretary of HUD. (*Id.*, ¶ 10; Ex. E.) As a result of the assignment, HUD became the holder of a first security interest in the Property. (Seltzer Decl. ¶ 10.)

**C.    The Reverse Mortgage Becomes Due and Payable.**

On January 29, 2019, Mary F. Huff passed away. This triggered the "due and payable" provision in paragraph 9 in the HUD Second Deed of Trust, allowing HUD to proceed with the foreclosure sale to satisfy the outstanding mortgage amount on the Property. (*Id.*, ¶ 11.)

On February 19, 2019, Novad Management Consulting, the servicer of the reverse mortgage loan on the Property ("Novad"), sent a "Repayment Letter" to the Estate of

---

[4] All references to Exhibits ("Ex.") are to the exhibits of the Declaration of Mark Seltzer, unless stated otherwise.

4

Mary F. Huff notifying that the mortgage on the Property had become due and payable as a result of the death of the borrower (i.e., Mary F. Huff) and that the total amount due and payable as of March 21, 2019 was $400,059.41. (*Id.*, ¶ 12, Ex. F.) The Repayment Letter enclosed a "Home Equity Conversion Mortgage (HECM) Short Sale" Letter that provided detailed information about how to submit a short sale offer to HUD for review and approval. (Seltzer Decl. ¶ 12, Ex. F.)

The Administrator has represented that he took the following efforts to obtain "highest and best price reasonably attainable" on a short sale of the Property: "Petitioner posted a sign in front of property. There was a publication notice for sale done in newspaper. Petitioner put property on the MLS since May 9, 2019." (ECF No. 14, ¶ 12.)

On June 18, 2019, Mathew Alden, as attorney for administrator, sent a letter to Novad stating that the Property is "currently involved in a short sale for $270,000," and requesting that Novad "voluntarily consent to adjust your claim so as to have escrow pay the estate its administrative costs." (Seltzer Decl. ¶ 13, Ex. G.) Novad did not consent. (ECF No. 1-3 at page 1, lines 24-27.) Regardless, as set forth in the "Short Sale" Letter (Ex. F), any request on a short sale offer should have been directed to HUD, not Novad. (Seltzer Decl. ¶ 13, Ex. F.)

HUD has requested and received an appraisal on the Property valuing it at $275,000 as of August 20, 2019. (Seltzer Decl. ¶ 14.) As of September 18, 2019, the outstanding balance on the Property was $409,417.66. (*Id.*, ¶ 15; Ex. H.)

Because of HUD's interest in the Property, HUD is authorized by contract and federal regulations to approve the sale of the Property. *See* Ex. A, § 9, Ex. C, § 9, Ex. F; 24 C.F.R. § 206.125. Before HUD can approve the sale of the Property by the Decedent's Estate, it must receive a Closing Disclosure (a HUD-1 form) from the seller and other information to verify that all closing costs for a sale comply with HUD guidelines. (Seltzer Decl. ¶ 16.) To date, HUD has not received a HUD-1 form regarding a sale of the Property. (*Id.*)

### D.     The Two Petitions Subject To This Motion.

The Administrator, who lives on the Property and is not paying rent to the estate, filed the Petition for Sale Order and the Petition for Sale Proceeds on July 3, 2019 in the Superior Court of the State of California for the County of San Bernardino, Case No. PROPS1900264. (Declaration of Paul B. Green ("Green Decl."), ¶ 2; ECF No. 14; ECF No. 1-2, Ex. 2.) The Petitions were filed without having received HUD's approval of the sale of the Property. (ECF No. 1-3, at page 1, lines 24-27.)

The Petition for Sale Order represents that the Property was sold in a private sale on June 14, 2019 to Larry Huff for $270,000. (ECF No. 1-1, Ex. 1.) The Administrator later represented that Larry Huff "elected to not move forward with the sale" and that the "real property has found" another buyer. (ECF No. 1-3, Ex. 3, ¶ 3.) On July 30, 2019, the Administrator amended the Petition for Sale Order to represent that the Property had been sold in a private sale on July 28, 2019 to T.D.S. Unlimited Inc. for $270,000. (ECF No. 1-4, Ex. 4; *see also* ECF No. 14.)[5] The Report of Sale seeks approval for a payment of $20,000, representing a 6% commission on the purchase price, to Premier Realty Group Services. (ECF No. 14, ¶¶ 1, 5.) Crystal Hoggard of Premier Realty signed as the buyer's agent. (ECF No. 1-1, ECF page 5 of 14; ECF No. 1-4, ECF page 5 of 14; ECF 14-1, ECF page 3 of 12.)

Crystal Hoggard's husband, Brandon Hoggard, signed the purchase agreement on behalf of T.D.S. Unlimited Inc. (Green Decl. ¶ 3; ECF No. 1-4, ECF page 13 of 14.) However, under California law, the "estate is not liable to an agent or broker . . . for any fee, commission, or other compensation or expenses in connection with the sale of the property . . . [w]here the agent or broker representing the purchaser to whom the sale is confirmed has any interest in the purchaser."  Cal. Probate Code § 10160.

---

[5] It is unclear from the evidence submitted by the Administrator in this action if the Property has been sold in a private sale and who is in current possession of the Property. *Cf*. ECF No. 14 (representing that a private sale occurred on July 28, 2019), with ECF No. 11-1, ¶ 3 (representing that the Property has received a new purchase offer for $300,000).

The Petition for Sale Proceeds seeks administrative fees of $19,514, including a commission of $8,400 to the Administrator and $8,400 to the Administrator's attorney. (ECF No. 1-2, Ex. 2, ¶¶ 5, 8.) This petition seeks a "court order that $19,514.00 be withheld from the sale of proceeds from" the Property. The Administrator sought this relief over the objection of the servicer Novad (ECF No. 1-3 at page 1, lines 24-27) and apparently with conducting minimal due diligence on HUD's interest in the Property (*see* ECF No. 12-2, Alden Decl., ¶ 5 (describing conversations with the real estate broker as the basis for the Administrator's knowledge of HUD's interest in the Property).)

## E. Removal To Federal Court.

The Administrator served the U.S. Attorney's office with the two petitions on August 22, 2019, two business days before the August 26 hearing at which the Administrator sought court approval of the sale and the use of its proceeds. This is also less that than the 15 days notice for a hearing required by California Probate Code § 1220.

On August 22, 2019, HUD removed the two petitions, not the entire probate proceedings, to federal court. (ECF No. 1.)

On August 28, 2019, the Administrator filed a request to proceed *in forma pauperis*. (ECF No. 9.)

On September 10, 2019, HUD filed an Opposition and Objections to the Administrator's Petition for Sale Order and Petition for Sale Proceeds. (ECF No. 11.) HUD objects to the Petition for Sale Order because, among other things, the proposed sale adversely affects HUD's interest in the Property as the owner of a Deed of Trust on the Property and does not represent the best offer on the Property.[6] HUD objects to the Petition for Sale Proceeds because, among other things, it is premature and requests excessive fees not reasonably related to the proposed sale of the Property that would come out of the proceeds owed to HUD.

---

[6] HUD also objects to the $20,000 broker commission based on California Probate Code § 10160.5, which prohibits commissions to interested parties.

7

On September 13, 2019, the Administrator filed the Motion to Remand. (ECF No. 12.)

## III.   ARGUMENT

### A.   Removal Under 28 U.S.C. § 1442(a)(1) Was Proper.

Removal of the two petitions was proper under 28 U.S.C. § 1442(a)(1). 28 U.S.C. § 1442(a)(1) authorizes the removal of a civil action that is "against or directed to" "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity" to the district court embracing the place where the action is pending. For purposes of removal, "civil actions" are "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order . . . is sought or issued." 28 U.S.C. § 1442(d)(1).

"The purpose of the federal officer removal statute is to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties. The right of removal is absolute for conduct performed under color of federal office, and the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (citing *Arizona v. Manypenny*, 451 U.S. 232 (1981)) (internal quotations omitted). "An entity seeking removal under § 1442(a)(1) bears the burden of showing that (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Id.* at 1244 (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006)) (internal quotation marks omitted).

HUD meets each of these elements. First, the person seeking removal is Dr. Benjamin Carson, in his official capacity as Secretary of HUD. As the real party in interest, HUD is entitled to remove this action. *See*, *e.g.*, *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014) ("The unstated premise of all of these

8

decisions, with which we fully agree, is that the concept of a 'real party defendant in interest' is not only entirely valid, it is an important aspect of removal jurisprudence, despite the absence of the phrase from Rule 17 or elsewhere in the Federal Rules of Civil Procedure.").

Second, there is causal nexus between HUD's actions, the Administrator's claims on the Property, and any proceeds on the sale of the Property. Both the Petition for Sale Order and the Petition for Sale Proceeds were "directed to" HUD and the Secretary of HUD. Indeed, the probate court issued a summons directed to HUD. (ECF No. 1-5.) As the Motion states, the Administrator's counsel attempted to serve a copy of the Petition for Sale Order on HUD by mail. (Mot. ¶ 10.) He also attempted to personally serve the Petition for Sale Proceeds on HUD. (ECF No. 12-2, Alden Decl. ¶ 10.) He further attempted, contrary to the Federal Rule of Civil Procedure 4(i), to serve the U.S. Attorney's Office by email. (ECF No. 12-1 (email from Administrator's counsel).) These efforts demonstrate the Administrator's awareness that the petitions were "directed to" HUD, which had a mortgage interest in the Property.

Furthermore, HUD is entitled to the proceeds on the sale of the Property as the holder of a first security interest in the Property. (Seltzer Decl. ¶ 10.) Any sale of the Property cannot take place without HUD's approval. (*See id.*, ¶ 12; Ex. A, § 9; Ex. C, § 9; Ex. F; 24 C.F.R. § 206.125.) Therefore, there is a causal nexus between HUD's interest in the Property and the Administrator's attempt to rashly finalize a sale of the Property that will negatively impact HUD's interests.

Third, HUD has colorable federal defenses. While the Administrator argues that the petitions did not cite federal law, the title itself of the Petition for Sale Proceeds mentions HUD and includes the phrase, "Encumbered Property from Deed of Trust Held by Housing and Urban Development." (ECF No. 1-2, Ex. 2.) Moreover, each of the Deeds of Trust invoke federal law (Ex. A at § 17, Ex. C at § 17), as do the corresponding Notes (Ex. B at § 11; Ex. D at § 11).

Congress has vested HUD with authority in the sale of real property secured by

9

mortgage interests owned by HUD under the HECM program. *See* 24 C.F.R. § 206.125. HUD has filed an Opposition and Objections to the both petitions. (ECF No. 11.) HUD objects to the Petition for Sale Order because, among other things, the proposed sale adversely affects HUD's interest in the Property and does not represent the best offer on the Property. HUD also objects to the $20,000 broker commission because the broker, who is an interested party, should not benefit at the expense of a federal agency. HUD objects to the Petition for Sale Proceeds because, among other things, it is premature and requests excessive fees not reasonably related to the proposed sale of the Property that would come out of the proceeds owed to HUD. Furthermore, as discussed more below, the Petitions are within the ambit of the Property and Supremacy Clauses because of HUD's mortgage interest in the Property.

### B.     The Property And Supremacy Clauses Compel Removal.

This Court may exercise jurisdiction over the two petitions pursuant to the Property and Supremacy Clauses of the Constitution. HUD is a federal entity governed by federal law that obtained its interest in the Property through the National Housing Act's HECM insurance program. Federal law protects HUD's first security interest where extinguishment of part of its interest would interfere with federal purposes, or impede or condition implementation of federal policies and programs.

The United States Constitution provides that Congress has the "Power to dispose of and make all needful Rules and Regulations respecting . . . Property belonging to the United States[.]" U.S. Const. art. IV, § 3, cl. 2. This power is "without limitation." *State of Alabama v. State of Texas*, 347 U.S. 272, 273 (1954). "Property" includes "all [] personal and real property rightfully belonging to the United States" and all "mortgage interests of federal instrumentalities." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 331 (1936); *Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir. 1979). Furthermore, any security interest held by HUD in property is protected under the Property and Supremacy clauses of the Constitution. *Collegium Fund, LLC v. Wells Fargo Bank, N.A.*, 2014 WL 4635607, at *3 (D. Nev. Sept. 15, 2014) (holding that "HUD's protected, federal interest

10

in [] Property cannot be extinguished by a non-judicial foreclosure sale conducted by a private entity under state law").

When Congress exercises authority under the Property Clause, questions related to "[t]he validity and construction of contracts . . . , their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state." *United States v. Allegheny Cnty.*, 322 U.S. 174, 183 (1944) (abrogated on other grounds).

Federal law controls an adjudication of HUD's interest in the Property by virtue of the Supremacy Clause, which provides that "[t]his Constitution, and the Laws of the United States, which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "The Supremacy Clause seeks to avoid the introduction of the disparity, confusion, and conflict which would follow if the Government's general authority is subject to local controls." *Rust*, 597 F.2d at 179 (citing *Allegheny*, 322 U.S. at 183).

*Rust v. Johnson* is instructive because it involved an attempt to extinguish a federal interest obtained through a nationwide federal home lending program. *Id*. at 176. In *Rust*, the City of Los Angeles attempted to foreclose on a property in which the Federal National Mortgage Association ("FNMA") had a mortgage interest. *Id*. The city argued that foreclosure was appropriate under a California law allowing non-judicial foreclosure to satisfy its delinquent special assessment for improvements, and that it could convey absolute title after the sale. *Id.* at 180.

The *Rust* court did not take any issue with the validity or priority of the lien, but held that "the real issue in the lawsuit" and the crux of its decision "is that under federal law the improvement lien cannot be enforced without protecting the federal interest." *Id*. According to the court, the Constitution does not permit the federal lien to be extinguished by foreclosure because "[s]tate legislation must yield under the supremacy clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the

11

implementation of federal policies and programs." *Id*. at 179.

The *Rust* court determined that extinguishment of the federal interest under the state foreclosure scheme "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Id*. The court noted that Congress had given no indication of intent to have state law govern FNMA's interest. *Id*. at 180. Further, FNMA was not a party to the original contract, and it did not participate in individual negotiations of specifically tailored loans such that it could accommodate varying state laws. *Id*.

Courts in the Central District have relied on *Rust* in deciding cases involving HUD mortgage insurance programs under the National Housing Act, as well as similar Veterans Administration housing programs. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Asso.*, 117 F. Supp. 2d 970, 981 (C.D. Cal. 2000) ("[j]ust as the Ninth Circuit concluded in *Rust*, the Court concludes that permitting a private entity to sell property owned by the federal government hinders the [HUD's] goal in carrying out congressionally mandated objectives" under the National Housing Act); *see also Yunis v. United States*, 118 F. Supp. 2d 1024, 1028-29 (C.D. Cal. 2000) (VA lending program).

In *Sky Meadow*, HUD insured a home loan between a private lender and a borrower under the Single Family Mortgage Insurance Program. 117 F. Supp. 2d at 972-73. After default, HUD obtained title to the property. *Id*. at 973. The homeowners' association ("HOA") for the property recorded a notice of delinquent assessment and eventually sold the property. *Id*. HUD filed a quiet title suit and argued that the non-judicial foreclosure sale could not eliminate its interest. *Id*. The court determined that "a foreclosure sale of HUD's property will frustrate the purpose of the program, i.e. to insure home loans extended by private lenders to enable low to moderate income buyers to purchase a home." *Id*. The court held that the non-judicial foreclosure could not have divested HUD's property interest because "Congress has stated that the Secretary of HUD must dispose of HUD owned property in a manner that expands home ownership opportunities, strengthens neighborhoods and communities, and ensures a maximum

12

return to the mortgage insurance fund." *Id*. at 981, citing 24 C.F.R. § 291.1(a)(2).

Here, the relief that the Administrator seeks—a state court order approving of the sale of the Property that would result in almost $40,000 in fees and commissions to the detriment of HUD's mortgage interest on the Property—would infringe on HUD's property rights by offsetting funds from HUD to the Administrator's agents. The Administrator, who is living in the Property rent free, has other options available to him. He can: (1) provide HUD with the deed in lieu of foreclosure, (2) have HUD foreclose on the Property, (3) continue to market the Property for a better offer for purchase, or (4) obtain financing to buy the Property himself. (*See* Ex. A, § 9(d), Ex. C, § 9(c), Ex. F.) Instead of these options, the Administrator is attempting to sell the Property for his personal gain to the detriment of HUD and the American taxpayers.

The relief that the Administrator seeks would undermine the national policy goals set by Congress for HUD. Permitting the Administrator to ignore HUD's property rights "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Rust*, 597 F.2d at 179. As this Court has stated, "Congress has stated that the Secretary of HUD must dispose of HUD owned property in a manner that expands home ownership opportunities, strengthens neighborhoods and communities, and ensures a maximum return to the mortgage insurance fund." *Sky Meadow Asso.*, 117 F. Supp. 2d at 981. As detailed above, the overall amount paid on HECM claims by HUD increased to $5.69 billion in fiscal year 2018, and California is by far the state with the largest proportion of HECM endorsements. Remanding this action without entering a declaratory judgment protecting HUD's rights would establish adverse precedent in situations where the sale of a property securing a HUD mortgage interest is insufficient to pay off the outstanding debt upon the death of the borrower.

Accordingly, the Court should exercise jurisdiction, for the limited purpose of declaring HUD's rights concerning the Property, based on the Property and Supremacy Clauses.

**C.** **The Probate Exception Does Not Bar The Court From Entering An Order To Declare HUD's Rights With Respect To Each Petition.**

The Administrator argues that the "probate exception" bars federal jurisdiction over the two Petitions. However, "the probate exception provides a limited exception to federal jurisdiction." *F.T.C. v. J.K. Publications, Inc.*, 2009 WL 997421, at *2 (C.D. Cal. Apr. 13, 2009) (citing in *Marshall v. Marshall*, 547 U.S. 293 (2006)). "While it is true that courts have created an exception to federal subject matter jurisdiction for certain probate matters, the so-called 'probate exception' is 'narrow' and of 'distinctly limited scope.'" *Sec. & Exch. Comm'n v. Braslau*, 2016 WL 1735800, at *2 (C.D. Cal. May 2, 2016) (citing *Marshall*, 547 U.S. at 305).

"For the probate exception to apply, the matter at issue must be 'purely probate in nature' and/or sufficiently related to probate to warrant the preclusion of federal court jurisdiction." *Id.* at *2 (citing *Goncalves*, 865 F. Supp. 3d at 992). As the Supreme Court stated in *Marshall v. Marshall*, "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court." 547 U.S. 293, 296 (2006).

As the Motion acknowledges, "a federal court may exercise its jurisdiction to adjudicate rights in . . . property that is subject to a state probate proceeding where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *J.K. Publications*, 2009 WL 997421, at *3 (citing *Marshall*, 547 U.S. at 310) (quotations marks omitted); *see also* Mot. at 6:12-20. To this end, courts have rejected the argument that the probate exception bars a party from seeking a federal court order that "adjudicates the property rights [that] the prevailing party can then seek enforcement of . . . in the probate proceedings." *See id.* at *3 (citing S.D.N.Y. cases); *In re Guardianship of Neely*, 2012 WL 830493, at *3 (N.D. Ind. Mar. 9, 2012) (holding that probate exception did not require remand and explaining that "a federal court properly

14

exercising its jurisdiction *can* interfere with the administration of an estate, but only to the extent that its adjudication of rights to property is a judgment which must be afforded recognition by the state court"); *but see Butler v. Kosin*, 2009 WL 210721, at \*3 (W.D. Va. Jan. 28, 2009) (remanding case because "although federal courts may normally determine the validity and amount of an estate's tax liability . . . [the] complaint essentially asks this court to administer the **entire estate** by ascertaining **all claims**, as well as their respective priorities." (emphasis added)).

This Court has adjudicated contract disputes that are "merely related to the probate proceeding and do[] not require the Court to probate a will or administer an estate." *In re Kendricks*, 572 F. Supp. 2d 1194, 1198 (C.D. Cal. 2008); *see also Goncalves*, 865 F.3d at 1256 (discussing the probate exception under *Marshall* and concluding that the district court had jurisdiction to determine the rights to settlement funds under a federally approved contract); *Cunningham v. World Sav. Bank, FSB*, 2007 WL 4181838, at \*4 (D. Ariz. Nov. 21, 2007) (holding probate exception did not apply in a breach of contract action and allowing removal of a petition to restore assets of the estate filed in a state probate court). In *In re Kendricks*, administrators for an estate sued to recover royalty payments covered by a contract. 572 F. Supp. 2d at 1195-96. After defendants removed the case to federal court, the Court denied the administrator's motion to remand because resolving the contract dispute did not require the Court to administer the estate. *Id*. at 1198. Also, the royalties at issue were not in the possession of the probate court, which meant that the probate exception did not apply. *Id*.

Here, the probate exception does not apply to either the Petition for Sale Order or the Petition for Sale Proceeds because HUD is not requesting the Court to resolve either Petition or to administer the Huff estate. Rather, this Court should enter declaratory relief protecting HUD's interests before remanding the two petitions back to state court as part of the administration of the estate.

This Court may adjudicate disputes about the contracts relating to the reverse mortgage because they are "merely related to the probate proceeding and do[] not require

the Court to probate a will or administer an estate." *In re Kendricks*, 572 F. Supp. 2d 1194, 1198 (C.D. Cal. 2008). The rights that HUD seeks to enforce on the Petition for Sale Order are based on contract, namely the reverse mortgage agreements and documentation (Exs. A, B, C, D), and federal law. The deeds of trust have provisions addressing the procedures once the reverse mortgage debt become due and payable. (*See* Exs. A & C, § 9.) Federal regulations also govern the sale of real property encumbered by loans under the HECM program. 24 C.F.R. § 206.125 covers initial actions by the mortgagee when the mortgage becomes due and payable, appraisals, sales by borrowers, foreclosures, and sale of the acquired property. The Administrator is infringing on HUD's rights under the reverse mortgage agreements and under federal law by rushing to complete a sale of the Property without HUD's approval.

With respect to the Petition for Sale Proceeds, the reverse mortgage agreements do not authorize the payment of statutory fees to the Administrator and his agents for administration of a probate estate. The Adjustable Rate Second Note provides that when the reverse mortgage becomes due and payable that "the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law." (Exs. B & D, § 7(c).) There is not an exception for probate administration fees. The First Deed of Trust, which has been assigned to HUD, specifically provides that the "lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes." (Selzter Decl., Ex. A, §21.) Again, the First Deed of Trust does not contain an exception for the payment of fees of probate administration under state law. Furthermore, the broker fees that the Petition for Sale Order seeks are prohibited by California Probate Code § 10160.5 because the broker for the purchaser, Crystal Hoggard of Premier Realty, is the spouse of the buyer of the property, Brandon Hoggard of T.D.S. Unlimited Inc. (*See* Green Decl. ¶ 3; ECF No. 1-4, ECF page 13 of 14.) As such, this Court may

adjudicate these contract dispute because they are "merely related to the probate proceeding and does not require the Court to probate a will or administer an estate." *In re Kendricks*, 572 F. Supp. 2d at 1198.

Furthermore, the probate exception does not apply because the Administrator has not shown that the Property is in the probate court's possession. *See In re Kendricks*, 572 F. Supp. 2d at 1198. Based on the evidence submitted by the Administrator, it appears that the Property is not in the possession of the probate court. The Petition for Sale Order represents that the Property was sold in a private sale on July 28, 2019 to T.D.S. Unlimited Inc. for $270,000. (ECF No. 14 at ¶ 4; ECF No. 1-4, Ex. 4.) Regardless of who currently possesses the Property, HUD is not asking this Court to sell or seize control of the Property or the proceeds from any sale of the Property. Therefore, the Administrator has not shown that the probate exception applies.

The cases cited by the Administrator regarding the probate exception are distinguishable. Generally, they do not involve the issue at play here: whether the representative of an insolvent estate may obtain excessive fees from the short sale of property encumbered by HUD's mortgage over HUD's objection. The Administrator cites to *Hollander v. Irrevocable Trust*, 2010 WL 2719850, at *1 (C.D. Cal. July 7, 2010). However, *Hollander* is inapposite. The case did not involve the property rights of the United States. The plaintiff in that case, an individual, sought to interfere with the distribution of trust assets by the probate court pursuant to a settlement that had already been approved by the probate court. *Id*. at *2. Among other things, Plaintiff asked this Court to order a South Carolina probate court to return any money removed by the probate court to the trust. *Id*. There is a clear distinction between an order directing a probate court to move funds in the court's possession, as was the case in *Hollander*, and entering an order declaring HUD's rights on the sale of its property interests, which HUD seeks here before the probate court administers the entire estate and all claims on it. Furthermore, the Administrator has not even shown that the Property is in the possession of the California probate court, as discussed above.

17

*United States v. Paulson* is also distinguishable. 2019 WL 1418058, at \*2 (S.D. Cal. Mar. 29, 2019). There, the United States removed a probate petition that would administer an entire estate by requesting, among other things, that the probate court enter an order for final distribution of assets to address "all creditors' claims." *Id*. at \*1. The Court emphasized that the United States had filed a separate action to recover unpaid estate taxes, penalties, and interest from the estate. *Id*. Here, HUD seeks targeted relief, namely a declaration on HUD's rights regarding the sale of the Property and the proceeds from any sale of the Property with respect to the fees sought by the Administrator and his agents. HUD has not removed any petition requesting administration of the entire Huff estate and all claims on it.

Therefore, the probate exception does not prevent this Court from exercising jurisdiction over the two petitions for the limited purpose of entering an order declaring the rights of HUD, as the holder of the first security interest in the Property, to pre-approve any sale of the Property and to receive the proceeds of any sale of the Property.

## IV.    CONCLUSION

For these reasons, the Motion to Remand should be denied.

Dated: September 30, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


 */s/ Paul B. Green*
PAUL B. GREEN
Assistant United States Attorney

Attorneys for Real Party in Interest
Dr. Benjamin Carson, in his official capacity
as Secretary of U.S. Department of Housing
and Urban Development

18